CILENTI & COOPER, PLLC
Justin Cilenti (GC2321)
Peter H. Cooper (PHC4714)
60 East 42nd Street – 40th Floor
New York, NY 10165
T. (212) 209-3933
F. (212) 209-7102
info@jcpclaw.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

GUANG LI, CHARLIE CHEN, GHAZAL HASSAN, and  :  Case No. 22-CV-8701
SANJAY GURUNG, on behalf of themselves and others  :
similarly situated,  :
  :
                              Plaintiffs,  :  FLSA COLLECTIVE
  :  ACTION COMPLAINT
           -against-  :
  :
DH AND SONS INC. d/b/a SUSHI ISHIKAWA,  :  **Jury Trial Demanded**
DON Q. PHAM, THERESA PHAM, and  :
ANH NGUNYEN,  :
  :
                              Defendants.  :

---------------------------------------------------------------------X

        Plaintiffs GUANG LI, CHARLIE CHEN, GHAZAL HASSAN, and SANJAY

GURUNG (hereinafter, "Plaintiffs"), on behalf of themselves and other similarly situated

employees, by and through their undersigned attorneys, Cilenti & Cooper, PLLC, file this

Complaint against defendants DH AND SONS INC. d/b/a SUSHI ISHIKAWA ("DH

AND SONS INC."), DON Q. PHAM, THERESA PHAM, and ANH NGUNYEN (the

"Individual Defendants") (DH AND SONS INC. and the Individual Defendants are

collectively referred to as "Defendants"), and state as follows:

## INTRODUCTION

1.     This is an action brought by Plaintiffs on their own behalf and on behalf of all other similarly situated employees, alleging violations of the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and the New York Labor Law, arising from Defendants' failure to pay proper minimum wages, overtime compensation, and "spread of hours" premium, Defendants' misappropriation of Plaintiffs' tips, and requiring Plaintiffs to participate in an unlawful tip sharing arrangement with other of Defendants' employees who do not customarily receive tips as part of their employment.

2.     Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and New York Labor Law by engaging in a pattern and practice of failing to pay tipped employees proper minimum wages, overtime compensation, and by misappropriating employee tips and requiring tipped employees to participate in an unlawful tip sharing arrangement.

3.     Plaintiffs allege that, pursuant to the FLSA, they are entitled to recover from Defendants: (a) unpaid minimum wages; (b) unpaid overtime compensation; (c) misappropriated tips; (d) liquidated damages; (e) prejudgment and post-judgment interest; and (f) attorneys' fees and costs.

4.     Plaintiffs further allege that, pursuant to the New York Labor Law, they are entitled to recover from Defendants: (a) unpaid minimum wages; (b) unpaid overtime compensation; (c) misappropriated tips; (d) liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act; (e) prejudgment and post-judgment interest; and (f) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

6.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

## PARTIES

7.    Plaintiffs are residents of Queens County, New York.

8.    Defendant, DH AND SONS INC., is a domestic business corporation organized under the laws of the State of New York, with a principal place of business at 419 East 74th Street, New York, New York 10021.

9.    Defendant, DH AND SONS INC., owns and operates a sushi restaurant and bar doing business as Sushi Ishikawa located at 419 East 74th Street, New York, New York 10021 (the "Restaurant").

10.    Defendant, DON Q. PHAM, is the Executive Chef/Master Sushi Chef at the Restaurant, and is the President and shareholder of DH AND SONS INC. and, as such, is an owner, officer, director, supervisor, managing agent, and proprietor of DH AND SONS INC. who actively participates in the day-to-day operations of the Restaurant and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with DH AND SONS INC.

11.     Defendant, THERESA PHAM, is the wife of defendant DON Q. PHAM, and is the Vice President and accountant/bookkeeper of DH AND SONS INC. and, as such is an owner, officer, manager, and/or supervisor of DH AND SONS INC. who actively participates in the day-to-day operations of the Restaurant and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with DH AND SONS INC.

12.     Defendant, ANH NGUNYEN, was originally hired to work as a host and subsequently as the Restaurant's "Service Director."   In or about June 2022, Ms. Ngunyen was promoted to the position of Manager.  Ms. Ngunyen was one of Plaintiffs' direct supervisors who actively participates in the day-to-day operations of the Restaurant and acted intentionally and maliciously and is an employer pursuant to the FLSA, 29 U.S.C. § 203(d) and Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and is jointly and severally liable with DH AND SONS INC.

13.     The Individual Defendants each exercised control over the terms and conditions of Plaintiffs' employment in that they have the power to and do in fact: (i) hire and fire employees, (ii) determine rates and methods of pay, (iii) determine work schedules, (iv) supervise and control the work of the employees, and (v) create and maintain employment records.

14.     The Individual Defendants are present on the premises of the Restaurant on a daily basis, actively supervise the work of the employees, and mandate that all issues

concerning the employees' employment – including hours worked and pay received – be authorized and approved by them.

15.     Upon information and belief, during all times relevant to the allegations herein, DH AND SONS INC. was, and continues to be, an "enterprise engaged in commerce" within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or that handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce, and (ii) has and has had an annual gross volume of sales of not less than $500,000.

16.     Defendants employed Plaintiff, GUANG LI, to work at the Restaurant as non-exempt server from on or about November 13, 2019 until on or about September 17, 2022.

17.     Defendants employed Plaintiff, CHARLIE CHEN, to work at the Restaurant as non-exempt server from in or about September 2019 until on or about September 10, 2022.

18.     Defendants employed Plaintiff, GHAZAL HASSAN, to work at the Restaurant as non-exempt server from in or about January 2022 until on or about September 2, 2022.

19.     Defendants employed Plaintiff, SANJAY GURUNG, to work at the Restaurant as non-exempt server from on or about September 16, 2021 until on or about April 30, 2022.

20.     The work performed by Plaintiffs was directly essential to the business operated by Defendants.

21.     Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned minimum wages in direct contravention of the FLSA and New York Labor Law.

22.     Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned overtime compensation in direct contravention of the FLSA and New York Labor Law.

23.     Defendants knowingly and willfully misappropriated tips from Plaintiffs in direct contravention of the FLSA and New York Labor Law.

24.     Plaintiffs have satisfied all conditions precedent to the institution of this action, or such conditions have been waived.

## STATEMENT OF FACTS

25.     Defendants DON Q. PHAM and THERESA PHAM hire employees to work as managers and supervisors to participate in the day-to-day operation of the Restaurant.

26.     Defendants DON Q. PHAM and THERESA PHAM hired defendant ANH NGUNYEN to work as a host, and subsequently as a "Service Director." In or about June 2022, Ms. Ngunyen was promoted to the position of Manager/Supervisor of the Restaurant.  Through authority granted to her by DON Q. PHAM and THERESA PHAM, Ms. Ngunyen has authority to hire and fire employees, set employee work schedules, and set employee rates of pay.

27.     Defendants DON Q. PHAM and THERESA PHAM themselves also actively participate in the day-to-day operation of the Restaurant.  For instance, defendant DON Q. PHAM is the Executive Chef and Master Sushi Chef, and defendant THERESA PHAM is the accountant/bookkeeper for the Restaurant.  Each personally supervise and

direct the work of the employees, including the managers who directly supervise the employees, and instruct them how to perform their jobs.

28.     Although defendants DON Q. PHAM and THERESA PHAM provide defendant ANH NGUNYEN with authority to assist in running the day-to-day operations of the Restaurant, defendants DON Q. PHAM and THERESA PHAM create and approve all crucial business decisions.  This includes, among other things, decisions concerning the number of hours the employees work, the amount of pay that the employees are entitled to receive, and the manner in which the employees are to be paid.

**Plaintiff Guang Li**

29.     On or about November 13, 2019, Defendants hired plaintiff GUANG LI (a/k/a "Ron") to work as a waiter/server at the Restaurant.

30.     Neither at the time of hire, nor at any time thereafter, did Defendants provide Plaintiff with an accurate written wage notice that set forth his regular hourly rate of pay and his corresponding overtime rate of pay.

31.     As part of his job as a server, Plaintiff was required to engage in several non-tipped activities that exceeded 20% of his daily and weekly work shift, including but not limited to, preparing finger towelettes for the tables, cleaning the bathrooms, cleaning the dining area, vacuuming, preparing ginger, polishing glassware, ironing and folding napkins, and breaking down the outdoor seating area.

32.     Plaintiff worked continuously for Defendants in that capacity until on or about September 17, 2022.

33.     From the beginning of his employment and continuing through approximately March 15, 2020, Plaintiff worked three (3) to four (4) days per week, and

his work schedule consisted of five (5) to seven (7) hours per shift from either 5:00 p.m. until 12:00 a.m. (Fridays and Saturdays) or from 6:00 p.m. until 11:00 p.m. or 12:00 a.m. (Mondays through Thursdays).  Thus, Plaintiff alleges working between fifteen (15) and twenty-six (26) hours per week during this period.

34.     Between on or about March 16, 2020 and in or about July 2020, the Restaurant provided customers with take-out orders only due to the COVID-19 pandemic.  Thus, Plaintiff did not work for Defendants during this period.

35.     Plaintiff returned to work at the Restaurant on or about August 18, 2020.

36.     Between August 18, 2020 and in on or December 2021, Plaintiff worked five (5) days per week and his work schedule consisted of five (5) to seven (7) hours per shift from either 5:00 p.m. until 12:00 a.m. (Fridays and Saturdays) or from 6:00 p.m. until 11:00 p.m. or 12:00 a.m. (Mondays through Thursdays).  Thus, Plaintiff alleges working between twenty-seven (27) and thirty-two (32) hours per week during this period.

37.     Beginning in on or about January 2022 and continuing through in or about April 2022, Plaintiff worked five (5) days per week and his work schedule consisted of five (5) to seven (7) hours per shift from either 6:00 p.m. until 11:00 p.m. or 12:00 a.m. (Tuesdays through Fridays) or from 5:00 p.m. until 12:00 a.m. (Saturdays).  Thus, Plaintiff alleges working between twenty-seven (27) and thirty-one (31) hours per week during this period.

38.     Beginning in on or about May 2022 and continuing through the remainder of his employment on or about September 17, 2022, Plaintiff worked five (5) days per week and his work schedule consisted of five (5) to six (6) hours per shift from either

6:00 p.m. until 11:00 p.m. or 12:00 a.m. (Tuesdays through Fridays) or from 6:00 p.m. until 12:00 a.m. (Saturdays). Thus, Plaintiff alleges working between twenty-six (26) and thirty (30) hours per week during this period.

39. Throughout the entirety of his employment, Plaintiff did not receive wages at or above the statutory minimum wage rate. Throughout the entirety of his employment, Plaintiff was unlawfully paid at the rate of $10 per hour for all hours worked.

**Plaintiff Charlie Chen**

40. In or about September 2019, Defendants hired plaintiff CHARLIE CHEN to work as a waiter/server at the Restaurant.

41. Neither at the time of hire, nor at any time thereafter, did Defendants provide Plaintiff with an accurate written wage notice that set forth his regular hourly rate of pay and his corresponding overtime rate of pay.

42. As part of his job as a server, Plaintiff was required to engage in several non-tipped activities that exceeded 20% of his daily and weekly work shift, including but not limited to, preparing finger towelettes for the tables, cleaning the bathrooms, cleaning the dining area, vacuuming, preparing ginger, polishing glassware, ironing and folding napkins, and breaking down the outdoor seating area. In addition to the foregoing, Plaintiff was also responsible for maintaining Defendants' inventory beverage orders once per week.

43. Plaintiff worked continuously for Defendants in that capacity until on or about September 10, 2022.

44.     From the beginning of his employment and continuing through approximately March 15, 2020, Plaintiff worked five (5) days per week, and his work schedule consisted of eight and one-half (8½) or nine and one-half (9½) hours per shift from either 3:00 p.m. until 11:30 p.m. (Mondays through Thursdays) or from 3:00 p.m. until 12:30 a.m. (Fridays and Saturdays).  Thus, Plaintiff alleges working between forty-three and one-half (43½) and forty-four and one-half (44½) hours per week during this period.

45.     Between on or about March 16, 2020 and July 2020, the Restaurant provided customers with take-out orders only due to the COVID-19 pandemic.  Thus, Plaintiff did not work for Defendants during this period.

46.     Plaintiff returned to work at the Restaurant on or about July 28, 2020.

47.     Between on or about July 28, 2020 and in on or December 2021, Plaintiff worked five (5) days per week and his work schedule consisted of eight and one-half (8½) or nine and one-half (9½) hours per shift from either 3:00 p.m. until 11:30 p.m. (Mondays through Thursdays) or from 3:00 p.m. until 12:30 a.m. (Fridays and Saturdays).  Thus, Plaintiff alleges working between forty-three and one-half (43½) and forty-four and one-half (44½) hours per week during this period.

48.     Beginning in on or about January 2022 and continuing through the remainder of his employment on or about September 10, 2022, Plaintiff worked four (4) days per week and his work schedule consisted of eight and one-half (8½) or nine and one-half (9½) hours per shift from either 3:00 p.m. until 11:30 p.m. (Mondays through Thursdays) or from 3:00 p.m. until 12:30 a.m. (Fridays and Saturdays).  Thus, Plaintiff

alleges working between thirty-four (34) and thirty-six (36) hours per week during this period.

49.     Throughout the entirety of his employment, Plaintiff did not receive wages at or above the statutory minimum wage rate, nor did he receive proper overtime compensation.  Throughout the entirety of his employment, Plaintiff was unlawfully paid at the rate of $10 per hour straight time for all hours worked.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half in contravention of state and federal labor laws.

**Plaintiff Ghazal Hassan**

50.     In or about January 2022, Defendants hired plaintiff GHAZAL HASSAN to work as a waitress/server at the Restaurant.

51.     Neither at the time of hire, nor at any time thereafter, did Defendants provide Plaintiff with an accurate written wage notice that set forth her regular hourly rate of pay and her corresponding overtime rate of pay.

52.     As part of her job as a server, Plaintiff was required to engage in several non-tipped activities that exceeded 20% of her daily and weekly work shift, including but not limited to, preparing finger towelettes for the tables, cleaning the bathrooms, cleaning the dining area, vacuuming, preparing ginger, polishing glassware, ironing and folding napkins, and breaking down the outdoor seating area.

53.     Plaintiff worked continuously for Defendants in that capacity until on or about September 2, 2022.

54.     From the beginning of her employment and continuing through in or about June 2022, Plaintiff worked three (3) to four (4) days per week, and her work schedule

consisted of eight and one-half (8½) or nine and one-half (9½) hours per shift from either 3:00 p.m. until 11:30 p.m. (weekdays) or 12:30 a.m. (Fridays and Saturdays).   Thus, Plaintiff alleges working between twenty-five and one-half (25½) and thirty-five (35) hours per week during this period.

55.    From in or about July 2022 and continuing through the remainder of her employment on or about September 2, 2022, Plaintiff worked two (2) days per week, and her work schedule consisted of eight and one-half (8½) hours per shift from 3:00 p.m. until 11:30 p.m. (weekdays) or nine and one-half (9½) hours per shift from 3:00 p.m. until 12:30 a.m. (Fridays and Saturdays).   Thus, Plaintiff alleges working between seventeen (17) and nineteen (19) hours per week during this period.

56.    Throughout the entirety of her employment, Plaintiff did not receive wages at or above the statutory minimum wage rate.   Throughout the entirety of her employment, Plaintiff was unlawfully paid at the rate of $10 per hour for all hours worked.

**Plaintiff Sanjay Gurung**

57.    On or about September 16, 2021, Defendants hired plaintiff SANJAY GURUNG to work as a waiter/server at the Restaurant.

58.    Neither at the time of hire, nor at any time thereafter, did Defendants provide Plaintiff with an accurate written wage notice that set forth his regular hourly rate of pay and his corresponding overtime rate of pay.

59.    As part of his job as a server, Plaintiff was required to engage in several non-tipped activities that exceeded 20% of his daily and weekly work shift, including but not limited to, preparing finger towelettes for the tables, cleaning the bathrooms, cleaning

the dining area, vacuuming, preparing ginger, polishing glassware, ironing and folding napkins, and breaking down the outdoor seating area.

60.     Plaintiff worked continuously for Defendants in that capacity until on or about April 30, 2022.

61.     Plaintiff worked five (5) days per week, and his work schedule consisted of eight and one-half (8½) or nine and one-half (9½) hours per shift from either 3:00 p.m. until 11:30 p.m. (weekdays) or from 3:00 p.m. until 12:30 a.m. (Fridays and Saturdays). Thus, Plaintiff alleges working between forty-two and one-half (42½) and forty-four and one-half (44½) hours per week.

62.     Throughout the entirety of his employment, Plaintiff did not receive wages at or above the statutory minimum wage rate, nor did he receive proper overtime compensation.  Throughout the entirety of his employment, Plaintiff was unlawfully paid at the rate of $10 per hour straight time for all hours worked.  Work performed above forty (40) hours per week was not paid at the statutory rate of time and one-half in contravention of state and federal labor laws.

63.     Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA and New York State minimum wage to Plaintiffs and other similarly situated employees.

64.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in direct violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

**Defendants' Unlawful Tip Misappropriation Against All Plaintiffs**

65. In addition to failing to pay Plaintiffs proper minimum wages and overtime compensation, Defendants improperly and unlawfully misappropriated a certain portion of the tips afforded to their tipped employees, including Plaintiffs. More specifically, Defendants created an unlawful tip pooling/sharing arrangement for its tipped employees. Defendants' tip pooling/sharing arrangement included a "point system," whereby each of the Defendants' tipped employees received a percentage share of the tips received by customers.

66. Not only did Defendants create the tip pooling/sharing arrangement, Defendants also monitored, retained, and distributed the tip funds.

67. As part of its tip pooling/sharing arrangement, Defendants unlawfully required its servers to share a portion of their tips with Defendants' Expeditor.

68. The job of Defendants' Expeditor is to ensure that food orders are prepared in a timely manner so that all orders for a table are ready simultaneously and served while warm.

69. Expeditors do not regularly and customarily receive tips as part of their job and are not otherwise entitled to share the tips of a restaurant's food service workers or service employees.

70. As part of its tip pooling/sharing arrangement, Defendants unlawfully required its tipped employees, including Plaintiffs, to forfeit a portion of their tips to the benefit of Defendants' Expeditor.

71. Defendants' expeditor received a significant amount of money per week in tips, which otherwise belonged to Plaintiffs.

72.     Moreover, as part of its tip pooling/sharing arrangement, Defendants unlawfully required its servers to share a portion of their tips with another employee that does not customarily and regularly receive tips as part of their employment – Defendants' host, "Service Director," and Manager – defendant ANH NGUNYEN.

73.     Further, Defendants unlawfully misappropriated and retained a portion of Plaintiffs' tips for "the house," which upon information and belief, were used to pay the salaries of Defendants' back of the house (*i.e.*, cooks) employees.

74.     As a result of Defendants' unlawful tip pooling/sharing arrangement, which deprived Defendants' tipped employees, including Plaintiffs, of all of their rightful tips, Defendants are not entitled to take any "tip credits" under federal or state law.  As such, Defendants were required to pay all of its tipped employees, including Plaintiffs, at the full statutory minimum wage rate.

75.     At all relevant times, upon information and belief, and during the course of Plaintiffs' employment, Defendants failed to maintain accurate and sufficient time and pay records.

## COLLECTIVE ACTION ALLEGATIONS

76.     Plaintiffs bring this action individually and as class representatives on behalf of themselves and all other current and former non-exempt tipped employees who have been or were employed by Defendants since October 13, 2019 until the close of the opt-in period as set by the Court (the "Collective Action Period"), and who were compensated at rates less than the statutory minimum wage and/or less than time and one-half for all hours worked in excess of forty (40) hours per workweek (the "Collective Action Members").

77.    Upon information and belief, the collective action class is so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than twenty (20) Collective Action Members who worked for Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.  Therefore, Plaintiffs submit that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

78.    Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

79.    This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

80.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it

virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

81.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.  Among the common questions of law and fact common to Plaintiffs and other Collective Action Members are:

    a.    Whether Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA;

    b.    Whether Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Collective Action Members;

    c.    What proof of hours worked and pay received is sufficient where the employer fails in its duty to maintain wage and hour records;

    d.    Whether Defendants failed to pay Plaintiffs and the Collective Action Members statutory minimum wages;

    e.    Whether Defendants failed to pay Plaintiffs and the Collective Action Members overtime compensation for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

    f.    Whether Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

     g.     Whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements.

82.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

83.     Plaintiffs and others similarly situated have been substantially damaged by Defendants' wrongful conduct.

## STATEMENT OF CLAIM

### COUNT I
### [Violation of the Fair Labor Standards Act]

84.     Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "83" of this Complaint as if fully set forth herein.

85.     At all relevant times, upon information and belief, DH AND SONS INC. was and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and the Collective Action Members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

86.     At all relevant times, Defendants employed Plaintiffs and the Collective Action Members within the meaning of the FLSA.

87.     Upon information and belief, during each of the most recent three (3) years, DH AND SONS INC. has had gross revenues in excess of $500,000.

88.     Defendants had, and continue to have, a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs and the Collective Action Members for hours worked.

89.     Defendants willfully failed to pay Plaintiffs and the Collective Action Members minimum wages in the lawful amount for hours worked.

90.     Plaintiffs and the Collective Action Members were entitled to be paid at the rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA.

91.     Defendants failed to pay Plaintiffs and the Collective Action Members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

92.     At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and the Collective Action Members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

93.     The FLSA mandates that wages cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear."  The wage requirements of the FLSA will not be met where the employee kicks-back directly or indirectly to the employer the whole or part of the wage delivered to the employee.  29 C.F.R. § 531.35.

94.     Defendants knowingly and willfully violated the FLSA by misappropriating tips from Plaintiffs and the Collective Action members.

95.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and the Collective Action Members at the statutory minimum wage rate and the statutory overtime rate of time and

one-half for all hours worked in excess of forty (40) hours per week, and by misappropriating their tips, when they knew or should have known such was due and that non-payment of minimum wages, overtime compensation, and tips would financially injure Plaintiffs and the Collective Action Members.

96.     As a result of the Defendants' failure to properly record, report, credit and/or compensate its employees, including Plaintiffs and the Collective Action Members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

97.     Defendants failed to properly disclose or apprise Plaintiffs and the Collective Action Members of their rights under the FLSA.

98.     As a direct and proximate result of Defendants' violation of the FLSA, Plaintiffs and the Collective Action Members are entitled to liquidated damages pursuant to the FLSA.

99.     Due to Defendants' reckless, willful and unlawful acts, Plaintiffs and the Collective Action Members suffered damages in an amount not presently ascertainable of unpaid minimum wages and unpaid overtime compensation, an equal amount as liquidated damages, unpaid misappropriated tips, and prejudgment interest thereon.

100.    Plaintiffs and the Collective Action Members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## COUNT II
### [Violation of the New York Labor Law]

101.   Plaintiffs re-allege and re-aver each and every allegation and statement contained in paragraphs "1" through "100" of this Complaint as if fully set forth herein.

102.   At all relevant times, Defendants employed Plaintiffs within the meaning of New York Labor Law §§ 2 and 651.

103.   Defendants knowingly and willfully violated Plaintiffs' rights by failing to pay Plaintiffs minimum wages in the lawful amount for hours worked.

104.   Defendants knowingly and willfully violated Plaintiff's rights by failing to pay Plaintiffs overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

105.   The New York Labor Law prohibits an employer from making any deductions from wages, other than standard deductions for taxes.  N.Y. Lab. Law § 193.

106.   The New York Labor Law also prohibits employers from receiving "kickbacks" from their employees.  N.Y. Lab. Law § 198-b.

107.   Defendants regularly obtained kickbacks from Plaintiffs by demanding and retaining gratuities from Plaintiffs in violation of the New York Labor Law.  N.Y. Lab. Law § 196-d.

108.   Defendants failed to properly disclose or apprise Plaintiffs of their rights under the New York Labor Law.

109.   Defendants failed to furnish Plaintiffs with a proper and accurate statement with every payment of wages listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations § 146-2.3.

110.    Defendants failed to keep true and accurate records of hours worked by each employee covered by an hourly minimum wage rate, the wages paid to all employees, and other similar information in contravention of New York Labor Law § 661.

111.    Defendants failed to establish, maintain, and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194(4), and New York State Department of Labor Regulations § 146-2.1.

112.    Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants their unpaid minimum wages, unpaid overtime compensation, unpaid misappropriated tips, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 663(1), 198.

113.    Plaintiffs are also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as liquidated and statutory damages pursuant to the New York State Wage Theft Prevention Act.

## **PRAYER FOR RELEIF**

**WHEREFORE**, Plaintiffs GUANG LI, CHARLIE CHEN, GHAZAL HASSAN, and SANJAY GURUNG, on behalf of themselves and all similarly situated Collective Action Members, respectfully requests that this Court grant the following relief:

(a)    An award of unpaid minimum wages due under the FLSA and New York Labor Law;

(b)    An award of unpaid overtime compensation due under the FLSA and New York Labor Law;

(c)    An award of unpaid misappropriated tips in violation of federal and state law;

(d)    An award of liquidated damages as a result of Defendants' failure to pay minimum wages and overtime compensation, pursuant to 29 U.S.C. § 216;

(e)    An award of liquidated damages as a result of Defendants' failure to pay minimum wages and overtime compensation, pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act;

(f)    An award of statutory damages pursuant to the New York State Wage Theft Prevention Act;

(g)    An award of prejudgment and post-judgment interest;

(h)    An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and

(i)    Such other and further relief as this Court determines to be just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

trial by jury on all issues.

Dated: New York, New York
          October 13, 2022

Respectfully submitted,

CILENTI & COOPER, PLLC
*Attorneys for Plaintiffs*
60 East 42nd Street – 40th Floor
New York, New York 10165
Telephone: (212) 209-3933
Facsimile: (212) 209-7102

By:

Giustino (Justin) Cilenti (GC2321)

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, Guang Li, am an individual currently or formerly employed by Sushi Ishikawa

and/or related entities.  I consent to be a plaintiff in the above-captioned action to collect

unpaid wages.

Dated: New York, New York
August 23, 2022

_____
Guang Li

**CONSENT TO SUE UNDER**
**FAIR LABOR STANDARDS ACT**

I, Charlie Chen, am an individual currently or formerly employed by Sushi Ishikawa and/or related entities.  I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
      August 23, 2022

_____
Charlie Chen

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, Ghazal Hassan, am an individual currently or formerly employed by Sushi Ishikawa and/or related entities. I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
       August 23, 2022

_____
Ghazal Hassan

**From:** **Dulen Gurung** grgdulen@gmail.com 
**Subject:** Re: Sushi Ishikawa - Retainer
**Date:** August 30, 2022 at 1:06 PM
**To:** jcilenti@jcpclaw.com

**CONSENT TO SUE UNDER
FAIR LABOR STANDARDS ACT**

I, Sanjay Gurung, am an individual currently or formerly employed by Sushi Ishikawa and/or related entities.  I consent to be a plaintiff in the above-captioned action to collect unpaid wages.

Dated: New York, New York
      August 23, 2022

_____
Sanjay Gurung